UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:10CR47

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>vs.<br><br>JOE L. LANNING,<br><br>       Defendant. | DOCKET NO. 1:10 CR 47<br><br>**BRIEF FOR APPELLANT** |

## STATEMENT OF JURSIDICTION

The Magistrate Court had jurisdiction pursuant to 18 U.S.C. § 3231. This Court has jurisdiction pursuant to 18 U.S.C. § 3742.

## STATEMENT OF THE CASE

On November 12, 2009, the government charged Joe L. Lanning with disorderly conduct, in violation 36 C.F.R. § 2.34(a)(2). Ex. 1. On July 22, 2010, Lanning moved to dismiss the citation on the grounds that the disorderly conduct provision was impermissibly vague and that the prosecution violated the Equal Protection component of the Fifth Amendment's Due Process Clause. Ex. 2.

On July 27, 2010, the case was tried before Magistrate Judge Howell. Dkt. 7. The court found Lanning guilty and sentenced him to 15 days' incarceration, a $1000.00 fine, and a two-year ban on visiting federal forests and parks. Tr. 126-27; Ex. 3. Lanning timely appealed. Dkt. 2.

1

**STATEMENT OF FACTS**

On November 12, 2009, Joseph Darling, a ranger on the Blue Ridge Parkway, participated in a special operation targeting public sexual conduct between men. Tr. 40, 42. According to Darling, the sting was a response to complaints about sexual activity occurring near the Parkway, and Darling was working undercover at the Parkway's Sleepy Gap Overlook near Asheville, North Carolina. Tr. 40-41, 44.

Because the sting targeted consensual activity—not assault—Darling sought to "string" suspects "along" so they would believe he was interested in sexual activity with him. Tr. 78-79. Thus, rather than warding off advances, Darling tried to get the targets to "cross[] a line." Tr. 42; *see also* Tr. 78-79. Lanning was one of those targets: he propositioned Darling for sex, Darling accepted, and Lanning then grabbed Darling's crotch over Darling's clothing. Tr. 47-48, 50-51. There were only three or four other people in the woods at the time, and there is no evidence that any of them was able to see the encounter. *See* Tr. 75-76.

The primary questions in this case are whether secluded, clothed, consensual touching is "disorderly conduct" proscribed by 36 C.F.R. § 2.34 and, if so, whether § 2.34 is constitutional. Section 2.34 provides in pertinent part:

> (a) A person commits disorderly conduct when, with intent to cause public alarm, nuisance, jeopardy or violence, or knowingly or recklessly creating a risk thereof, such person commits any of the following prohibited acts:
> \*   \*   \*
> (2) Uses language, an utterance, or gesture, or engages in a display or act that is obscene, physically threatening or menacing, or done in a manner that is likely to inflict injury or incite an immediate breach of the peace.

**I.     The Encounter Between Darling and Lanning**

Darling testified that as he walked through the woods, he passed Lanning, a 62-year old widower with no criminal history, who "grabbed his [own] groin and kept walking." Tr. 45-46,

2

62. After witnessing this gesture, Darling said "hi" to Lanning and continued walking in the opposite direction. Tr. 45. Five to ten minutes later, Darling observed Lanning standing alone in the woods on an "illegal" trail. Tr. 47, 58-59. Darling explained that an "illegal" trail is one that has not been designated by the Park Service for heavy public use and that has been established by people walking off the official trail. Tr. 60.

Darling approached Lanning on this "very narrow, secluded trail" and initiated "casual conversation" with him about the weather. Tr. 48, 58, 88. Darling told Lanning that he thought Asheville was "an open community." Tr. 48. He testified that this comment sought to communicate to Lanning that Asheville was accepting of homosexuals. Tr. 59. Lanning then "told [Darling] he wanted [Darling] to F him." Tr. at 47.

Darling unequivocally accepted that proposition. Specifically, he responded "okay or yes, or something to that affirmative." Tr. at 52. According to Darling, Lanning then turned away from Darling, walked backwards towards Darling with his left hand extended behind him, and grabbed the ranger's crotch area. Tr. 47-48, 50-51. At no time did Lanning display any private body parts to Darling. Tr. 57. Darling further testified that Lanning was "looking forward"—away from Darling—when he made contact with Darling. Tr. 51.[1]

That contact lasted only a moment because Darling immediately removed Lanning's hand and arrested him. Tr. 48, 83. There was no testimony that anyone else saw the contact. In fact, Darling testified that there were probably only "three or four" other people in the entire woods at the time. Tr. 75.

---

[1] The prosecutor repeatedly suggested that Lanning's conduct amounted to approaching a complete stranger and grabbing his crotch in a threatening manner. Tr. 25-26, 112-14. Given Darling's testimony that he consented to contact with Lanning (Tr. 51, 78-79), and did not consider Lanning's proposition to him to be either "fighting words" or something that would upset him, the prosecutor's suggestions were unwarranted. Tr. 80.

3

**II.     The Trial**

Lanning was tried on July 27, 2010. Before trial, Lanning moved to dismiss the citation on the ground that the disorderly conduct provision, § 2.34(a)(2), was unconstitutionally vague, thereby depriving Lanning of due process under the Fifth Amendment. See Ex. 2. Lanning also argued that the sting operation that led to his arrest for disorderly conduct violated the Equal Protection component of the Due Process Clause because, as applied, the sting operation discriminated against homosexual men.

The Magistrate Judge denied Lanning's motion before trial. Tr. 21-35. The court stated that § 2.34(a)(2) "clearly prohibits" the language and conduct set forth in Darling's statement of probable cause, which the court read into the record. Tr. 34; Ex. 1.[2] The court also stated that all sections of § 2.34(a)(2) were implicated in the ranger's allegations, and it read portions of § 2.34(a)(2) into the record. Tr. 35. But the court did not indicate what reasoning he used to reach that holding. For example, the court stated that Lanning's conduct was obscene "no matter what the definition." Tr. 34.

Darling was the only witness at trial. Tr. 39-90. At the close of the government's evidence, Lanning moved for a judgment of acquittal under Rule 29. Tr. 90. The defense first argued that the government failed to satisfy the statute's *mens rea* requirement because it presented no evidence that Lanning knowingly or recklessly created a risk of public alarm, nuisance, jeopardy or violence. Tr. 91. Lanning noted that Darling initiated the encounter, the encounter was consensual, that Lanning and the ranger were on a secluded trail during the encounter and that at no time during their encounter did another person come near them on the

---

[2] The probable cause statement alleged that, "[w]hen passing on the trail and during casual conversation, the male grabbed his groin[sic]. He [sic] stated he wanted me to fuck him. A short time latter [sic] he grabbed my genitals." Ex.1.

trail. Tr. 91, 93. The defense also argued that the government had failed to prove the *actus reus* requirement—*i.e.*, that Lanning's conduct was obscene or threatening—because other convictions under § 2.34 were for conduct "far more egregious than Mr. Lanning's." Tr. 92.

The government argued that the conduct should be considered obscene because of "circumstantial evidence" that Lanning intended to engage in sex on the trail, and because Lanning's behavior was the start of "a sex act in public." Tr. 101-02. The government also argued that the conduct was not just obscene, but violated the statute in "multiple ways." Tr. 102.

The court then denied defense's motion, stating that "in the light most favorable to the government, Mr. Lanning did violate the disorderly conduct statute." Tr. 103-04. The court gave no factual basis for its ruling.

In closing arguments, the government again argued that Lanning's conduct was a "precursor" that "leads to open sexual intercourse on the side of the parkway trails." Tr. 106. It further argued that Lanning's conduct, "coupled with the phrases, coupled with the discussion," was obscene. Tr. 107. It also added the allegation that Lanning's conduct was "psychically threatening" and "menacing" toward Darling. Tr. 107. The defense argued that Lanning's conduct was not obscene, that he lacked the requisite *mens rea*, and that his conduct was not physically threatening or menacing. Tr. 108-111. The court found Lanning guilty of disorderly conduct, and again gave no factual basis for its ruling. Tr. 114.

### III. Lanning's Sentence

At sentencing, Lanning's counsel argued that the sentencing factors of 18 U.S.C. § 3553(a) supported a sentence of probation. Tr. 117. Counsel stated that Lanning was a 62 year-old widower with two children and three grandchildren, had no criminal history, and was a retired factory worker. Tr. 117, 122. Counsel stated that Lanning's arrest had already provided

5

adequate deterrence. Tr. 118. Counsel also noted that defendants in other districts received only probation in other, far more egregious, disorderly conduct cases. Tr. 118-20. The government asked for a sentence of no more than 30 days' incarceration, citing a need for specific and general deterrence. Tr. 124.

Lanning was sentenced to 15 days' incarceration, a $1000 fine, special fees, and a two-year ban on visiting government forests and parks. Tr. 126-27

## ARGUMENT

### I. The Evidence At Trial Was Insufficient To Convict Lanning Of Disorderly Conduct

#### A. Standard Of Review

A defendant who is convicted and sentenced by a magistrate judge is not entitled to a trial *de novo* by a district court. Fed. R. Crim. P. § 58(g)(2)(D). "The scope of appeal shall be the same as an appeal from a judgment of a district court to a court of appeals." *Id.* "An appeal of an otherwise final sentence imposed by a United States magistrate judge may be taken to a judge of the district court and this section shall apply . . . as though the appeal were to a court of appeals from a sentence imposed by a district court." 18 U.S.C. § 3742(h). "Accordingly, [a district court] should not reverse the decision of the Magistrate unless, after considering all of the evidence in the most favorable light to the government's case, this court finds that the Magistrate (or any rational trier of fact) could not conclude beyond a reasonable doubt that the defendant was guilty." *United States v. Fattaleh*, 746 F. Supp. 599, 601 (D. Md. 1990).

#### B. Lanning's Conduct Falls Outside The Plain Language Of 36 C.F.R. § 2.34

"Under the first and 'cardinal canon' of statutory construction, 'courts must presume that a legislature says in a statute what it means and means in a statute what it says.'" *Stone v. Instrumentation Lab. Co.*, 591 F.3d 239, 243 (4th Cir. 2009) (quoting *Conn. Nat'l Bank v.*

6

*Germain*, 503 U.S. 249, 253-54 (1992)). Thus, "[i]n determining the scope of a statute, [courts] look first to its language, giving the words used their ordinary meaning." *Moskal v.United States*, 498 U.S. 103, 108 (1990) (internal quotation marks and citations omitted).

The plain meanings of § 2.34's *mens rea* and *actus reus* requirements are crucial here. With respect to *mens rea*, the government must prove that the defendant intentionally caused, or knowingly or recklessly created a risk of, "public alarm, nuisance, jeopardy or violence." 36 C.F.R. § 2.34(a). With respect to the *actus reus*, as pertinent here, the government must prove conduct that was "obscene, physically threatening or menacing, or done in a manner that is likely to inflict injury or incite an immediate breach of the peace." *Id.* § 2.34(a)(2).

Below, the government proved neither of those things. It only proved that, while standing in woods containing perhaps three or four other people, none of whom were around, Lanning momentarily grabbed the clothed crotch of someone who had consented to being touched. That momentary contact was not reckless—much less knowing or intentional—with respect to a risk of public alarm, nuisance, jeopardy or violence. But even if it was, the contact was not "obscene," "threatening," or "incit[ing]." The term "obscene" refers to conduct that is so prurient that it has no expressive value. The terms "threatening" and "inciting" refer to conduct that is likely to lead immediately to violence. The conduct here—consisting of fleeting, consensual, over-the-clothes contact—comes nowhere close to those definitions.

### 1. *Lanning Did Not Commit A Prohibited Act*

To be guilty of disorderly conduct, Lanning's behavior must have been "obscene, physically threatening or menacing." 36 C.F.R. § 2.34 (a)(2). But the government did not prove such conduct.

7

### a. *Lanning's Conduct Was Not Obscene*

Lanning's conduct fell far below the obscenity standard that has been defined by the federal courts. Although the Magistrate Judge ruled found that Lanning's speech as well as his conduct violated § 2.34, Tr. 35, that finding is incorrect. Counsel are unaware of any legal support that the government can convict someone based on the language in his private conversation with another person. *Cf. United States v. Alvarez*, 617 F.3d 1198, 1205-1206 (9th Cir. 2010) ("[T]he general freedom from government interference with speech, and the general freedom to engage in public and private conversations without the government injecting itself into the discussion as the arbiter of truth, contribute to the "breathing space" the First Amendment needs to survive.") Thus, only Lanning's conduct should be at issue in this case.

Obscenity is defined by the United States Supreme Court's decision in *Miller v. California*, 413 U.S. 15 (1973). In *Miller*, the Supreme Court said, "[t]he basic guidelines for the trier of fact must be, (a) whether the average person applying contemporary community standards will find that the work taken as a whole appeals to the prurient interest; (b) whether the work depicts or describes in a patently offensive way sexual conduct specifically defined by the applicable state law; and, (c) whether the work taken as a whole lacks serious literary, artistic, political or scientific value." *Id.* at 24, 93 S. Ct. at 2615. Under that standard, much sexually explicit material is not obscene. *See United States v. Jennings*, 496 F.3d 344, 354 (4th Cir. 2007).

The government bears the burden of proof with regard to all three prongs of the *Miller* test. *See United States v. Obscene Printed Matter*, 668 F. Supp. 50, 53 (D. Mass. 1987). Here, however, the government presented no evidence and made no argument that Lanning's conduct was obscene under the *Miller* test, nor did the court making any ruling that Lanning's conduct was obscene under *Miller*. Moreover, neither the government nor the court stated that some other

8

test applied. The government, for example, asserted that "obscene has an ordinary, common, everyday meaning. It's obvious. And it's certainly obvious on the facts of this case." Tr. 25. However, the government's own subjective speculations are not enough to show Lanning's conduct was obscene.

As shown below, the case law on obscene disorderly conduct illustrates that convictions for that offense involve conduct much more sexually explicit than Lanning's. While the disorderly conduct statute does not define "obscene," it is clear from these cases that, at the very least, obscenity involves nudity. *See, e.g., United States v. Mather*, 902 F. Supp. 560 (E.D. Penn. 1995) (defendants stood in the forest "with their trousers down, masturbating in front of one another" and then performed fellatio"); *United States v. Lanen*, 716 F. Supp. 208, 209 (D. Md. 1989) (in a park restroom, defendant masturbated in doorless toilet and turned intentionally to expose his genitals to undercover officer); *United States v. Falkenstein*, 2007 WL 1459302, No. 1:07cr49, at *1 (E.D. Va. May 15, 2007) (while masturbating in car, defendant lifted groin so officer could see, and officer confronted defendant with unzipped pants and testicles outside of his pants).

Here, however, no clothes were removed and there was no nudity. Lanning merely touched a consenting adult *outside* of his clothing. In fact, Lanning's conduct is most similar (but arguably less severe) to that of the defendant in *United States v. Malone*, where the district court vacated the disorderly-conduct conviction of someone who asked an undercover officer explicit sexual questions, rubbed his own private parts through his shorts, touched the officer's hand, rubbed the officer's chest, and pursued the officer twice after he walked away. 822 F. Supp. 1187, 1187-88 (E.D. Pa. 1993). We are not aware of any case in which a court upheld a conviction based on consensual over-the-clothing contact.

9

Analogizing Lanning's act to other similar conduct quickly shows that it is not obscene. For example, were Lanning's act to constitute disorderly conduct, then disorderly conduct could also be charged against a man who, walking along the same trail with his wife, flirtatiously grabs her rear-end. No person would call this conduct obscene, yet Lanning was charged and convicted for identical conduct. In looking at the conduct actually committed by Lanning, the facts at trial support that his conduct was not obscene.

### b. *Lanning Did Not Engage in Conduct That Was Physically Threatening, Menacing Or That Would Incite An Immediate Breach of the Peace*

In light of Darling's testimony that he sought to string Lanning along and that his objective was to pretend to be sexually interested in Lanning, Lanning's conduct cannot be construed as menacing, threatening, or likely to incite an immediate breach of the peace. *See* Tr. 42, 51-52, 78-79. Although the Magistrate Judge and the government made contrary statements below—with the government going so far as to analogize Lanning's conduct to an assault—those statements do not stand up to the evidence. *See* Tr. 34-35, 112-14.

Darling testified that he went undercover for the purpose of seeking men out to determine if they would "cross[] the line," so that he could arrest them for disorderly conduct. Tr. 52, 78-79. Darling specifically stated that he had to "string [Lanning] along" so that Lanning would think Darling was sexually interested in him. Tr. 79. To that purpose, Darling dressed as a hiker, he said "hi" to Lanning after witnessing him grab his crotch. Darling then initiated a conversation with Lanning on a secluded illegal trail. Further, it was Darling who attempted to signal an openness to homosexual conduct by saying to Lanning that Asheville was an "open community." Tr. at 59. And, after Lanning told Darling that he wanted to have sexual relations with him, Darling answered "yes" or "okay." Tr. at 51, 52.

10

Darling thus initiated conversation with Lanning about homosexual activity and then agreed to participate in sexual activity with him. Darling did all of this while playing the role of a man seeking a sexual encounter with another man. It is apparent from the facts that Lanning believed him, and the Magistrate Judge erred in trying and convicting Lanning based on a theory that his conduct was menacing or threatening.

Given Darling's intentionally consensual conduct with Lanning, it is even less plausible that Lanning's conduct could have incited an immediate breach of the peace. There is no testimony that anyone in the woods saw the brief contact between Lanning and Darling. And Darling testified that Lanning's proposition to him "did not incite his anger or wrath." Tr. 80. Accordingly, there is no evidence that Lanning's conduct would have incited a breach of the peace. *Cf. United States v. Joyner*. 2008 WL 624435, *2, *4, No. 1:07CR105 (Mar. 4, 2008) (defendant took pictures of the buttocks, pubic, and breast areas of young girls in a secretive manner; park visitors were extremely agitated by the defendant's actions and were threatening violence).

### 2. *Lanning Did Not Act With The Requisite Intent*

In addition to showing a requisite act, the government had to prove that Lanning intended to cause, or knowingly or recklessly created a risk of, public alarm, nuisance, jeopardy or violence. The evidence does not establish any of those mental states. For starters, the government did not argue below, and there is no evidence to suggest, that Lanning specifically intended to cause public alarm, nuisance, jeopardy or violence. But neither does the evidence show that Lanning knowingly or recklessly created a risk thereof.

Most important, the conduct occurred on a secluded trail for only a moment, making it virtually impossible for a passerby to see it. Darling testified that he and Lanning were on an out-

11

of-the-way "illegal trail," literally off the beaten path. While Darling stated that three or four other people may have been in the woods, there is no evidence any of these people were nearby when Lanning touched Darling. Moreover, given the nature of Lanning's conduct—outside of the clothing—Lanning could have easily removed his hand had anyone passed by.

In other words, there was very little chance one of the few people in the woods that day would have seen Darling and Lanning. And, even if they had, Lanning could have quickly removed his hand. That, of course, is not true when a defendant has his private parts exposed. The seclusion and lack of contact with others on the trail when Lanning briefly touched Darling outside of his clothing demonstrates that there was no risk of public alarm, nuisance, violence or jeopardy. *See Malone*, 822 F. Supp. at 1188 (vacating defendant's disorderly conduct conviction, finding that an act is only disorderly if it intended to disturb the public, and, "[h]ere, the public was not involved at all."). Here, as in *Malone*, there was no risk of public alarm, nuisance, violence or jeopardy and further, no evidence that there would have been public alarm, nuisance, violence or jeopardy had a member of the public seen Darling and Lanning together.

Moreover, the government presented absolutely no evidence that Lanning intended any further contact with Darling at the trail. Although the government argued below that Lanning intended to have further sexual contact with Darling in the woods, Tr. 101-02, it failed to prove that point. *See, e.g.*, Tr. 80-82 (Darling's testimony that Lanning had never said that he intended to have sex on the trail, and acknowledging the absence of evidence that Lanning possessed accessories used for sexual intercourse). In fact, Darling testified that Lanning may very well have intended to ask Darling back to his residence. Tr. 81-82. And because Lanning approached Darling by walking backwards, the evidence did not even prove that Lanning intended to grab the undercover ranger's crotch rather than his hand, arm or waist.

12

It is therefore beyond the scope of the evidence at trial to assume that Lanning had planned any further sexual contact with Darling on the trail. And even if he had, that would be irrelevant under § 2.34; it proscribes actual disorderly conduct, not attempted disorderly conduct. A factfinder could not reasonably conclude that Lanning's actual conduct—fleeting, consensual over-the-clothes contact—knowingly or recklessly created a risk of public alarm, nuisance, jeopardy or violence.

### C. Any Remaining Ambiguity Must Be Resolved In Lanning's Favor

Even if the preceding considerations did not support Lanning's interpretation—though they do—it could hardly be said that they obviously support the magistrate judge's ruling that Lanning violated § 2.34. "[W]here text, structure, and history fail to establish that the Government's position is unambiguously correct[,] [courts] apply the rule of lenity and resolve the ambiguity in [the defendant's] favor." *United States v. Granderson*, 511 U.S. 39, 53-54 (1994). "Resolving ambiguity in favor of lenity ensures that statutes provide "fair warning[,] . . . in language that the common world will understand, of what the law intends to do if a certain line is passed." *Barber v. Thomas*, 130 S. Ct. 2499, 2515 -2516 (2010) (quoting *United States v. Bass*, 404 U.S. 336, 348 (1971)).

The rule's relevance to this case is clear because the record does not even establish a theory under which Lanning was convicted. The court gave no reasons for concluding that Lanning's conduct violated § 2.34. *See* Tr. 115. Likewise, the prosecutor cited no standards for determining whether Lanning's conduct violated the statute; he simply asserted that Lanning's conduct was "obvious[ly]" obscene, Tr. 25, and that it was threatening. Tr. 112-14.

A prosecution in which no one can articulate why the defendant's conduct was illegal cannot survive the rule of lenity. If this Court construes § 2.34 to cover fleeting, consensual over-

13

the-clothing contact, the "common world" would not have had fair warning. *Bass*, 404 U.S. at 348 (quoting *McBoyle v. United States*, 283 U.S. 25, 27 (1931)).

### D. The Doctrine of Constitutional Avoidance Applies Here

This Court should vacate Lanning's conviction for the additional reason that doing so would avoid difficult constitutional questions. "[T]he principle of constitutional avoidance . . . requires the federal courts to strive to avoid rendering constitutional rulings unless absolutely necessary." *Norfolk Southern Ry Co. v. City of Alexandria*, 608 F.3d 150, 156-57 (4th Cir. 2010). Under that principle, courts should embrace "fairly possible" statutory interpretations that avoid serious constitutional questions. *INS v. St. Cyr*, 533 U.S. 289, 300 (2001).

As discussed below, holding that § 2.34 proscribes the conduct at issue here would raise serious questions about whether § 2.34 is unconstitutionally vague or violates the First Amendment. To avoid those questions, this Court should construe § 2.34 to proscribe sexual behavior only if it involved nudity or nonconsensual advances. *See Skilling v. United States*, 130 S. Ct. 2896, 2927-28 (2010) (construing the term "honest services" narrowly so that it would survive petitioner's vagueness challenge); *cf. United States v. 12 200-ft. Reels of Film*, 413 U.S. 123, 130, n. 7 (1973) ("[W]e are prepared to construe [terms like 'obscene'] as limiting regulated material to patently offensive representations or descriptions of that specific 'hard core' sexual conduct given as examples in *Miller v. California*") (citations omitted).

## II. Section 2.34 Is Unconstitutional On Its Face And As Applied Here

### A. Standard of Review

The magistrate judge's construction of federal regulations is reviewed *de novo*, *United States v. Boynton,* 63 F.3d 337, 342 (4th Cir. 1995), as are any constitutional challenges to the

14

judgment of conviction. *United States v. Daughtrey,* 874 F.2d 213, 218 (4th Cir. 1989). *See* Fed. R. Crim. P. 58(g)(2)(D).

### B. Section 2.34(a)(2) is Void for Vagueness

If this Court concludes that Lanning's conduct violates § 2.34, then that provision is unconstitutionally vague. "The void-for-vagueness doctrine requires that penal statutes define crimes so that ordinary people can understand the conduct prohibited and so that arbitrary and discriminatory enforcement is not encouraged." *United States v. McLamb*, 985 F.2d 1284, 1291 (4th Cir. 1993). Under that doctrine, which is a component of due process, "'a penal statute [must] define the criminal offense [1] with sufficient definiteness that ordinary people can understand what conduct is prohibited and [2] in a manner that does not encourage arbitrary and discriminatory enforcement.'" *Skilling*, 130 S. Ct. at 2927-28 (quoting *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)).

Upholding a disorderly conduct conviction based on a verbal proposition followed by consensual over-the-clothing contact would implicate both of those concerns. First, it would leave Americans guessing about what public displays of affection are illegal. Such displays often involve intimate but over-the-clothing contact. The actor Jon Hamm, for example, recently fondled two women's breasts and simulated fondling a man's genitals during a nationally televised show. But there was no nudity, and no one was arrested. That is because there is an abundant range of extremely vulgar conduct that does not amount to a crime. *See* "Vincent Price's Halloween Special" at 2:39 to 2:44 & 5:14 to 5:18, Saturday Night Live (Season 36, Episode 5), *available at* http://www.hulu.com/watch/189401/saturday-night-live-vincent-prices-halloween-special#s-p1-sr-i1.

15

Americans need to know, in advance and in no uncertain terms, what physical contact constitutes disorderly conduct. If disorderly conduct statutes are construed to cover consensual, over-the-clothing contact, as in this case, then such certainty will be impossible. Indeed, this case is a particularly acute example of that problem because the Magistrate Court indicated that § 2.34 proscribed Lanning's speech as well as his conduct. A provision that criminalizes private speech between two persons has serious constitutional deficiencies. *Cf. Pleasant Grove City, Utah v. Summum*, 129 S. Ct. 1125, 1132 (2009) ("[T]he government does not have a free hand to regulate private speech on government property.").

Second, construing disorderly-conduct provisions to proscribe consensual over-the-clothing contact would invite selective prosecution, particularly against homosexuals. If this Court construes § 2.34 to cover such contact, then future prosecutions may hinge on an officer's or prosecutor's judgment that clothed sexual contact between men is more "obscene" or "threatening" than clothed heterosexual contact. Thus, flirtatious contact between two men on a secluded park trail will be prosecuted as a crime, while conduct that is far more vulgar will be broadcast on national television.

### C. Section 2.34 Violates The First Amendment

If this Court agrees with the magistrate judge that Lanning's conduct and language were "obscene" under § 2.34, then § 2.34 violates the First Amendment. That Amendment protects both expressive conduct and speech. *See Virginia v. Black*, 538 U.S. 343, 358 (2003). Although Congress can regulate certain expressive conduct and speech consistent with the First Amendment, *see id.*, its interest in regulating fleeting over-the-clothing contact between consenting adults is hard to envision. Thus, under any standard of review, § 2.34 violates the First Amendment if it reaches the conduct at issue in this case.

16

### III. Lanning's Sentence is Plainly Unreasonable

#### A. Standard of Review

Because Lanning was sentenced for Class B Misdemeanor, which is a "petty offense," there is no sentencing guideline, and his sentence is reviewed under a "plainly unreasonable" standard. 18 U.S.C. § 3742(a)(4); *see also* 36 C.F.R. §1.3(a) (specifying which sections of the Code of Federal Regulations are not punishable by more than six months); 18 U.S.C. § 3559(a)(7) (sentencing classifications); 18 U.S.C. §19 (defining "petty offense").

#### B. The Magistrate Judge's Sentence Of Imprisonment Is So Disproportionate To Other Sentences That It Is Plainly Unreasonable

There is no Guidelines range for violations of § 2.34, so the general objectives and purposes of sentencing set out in 18 U.S.C. § 3553(a) supply the sentencing considerations relevant here. Under that provision, a court must impose a sentence "not greater than necessary"; consider "the nature and circumstances of the offense and the history and characteristics of the defendant"; and "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" 18 U.S.C. § 3553(a), (a)(1), (a)(6).

When examining the case law dealing with similar disorderly conduct, it is apparent that Lanning's sentence is out of proportion to his crime and to sentences in other districts. *See Mather*, 902 F. Supp. at 562 (defendants sentenced to one-year term of probation and fine for masturbating in front of each other and performing fellatio in a park); *Lanen*, 716 F. Supp. at 209 (defendant convicted of masturbating in front of an officer sentenced to one-year probation and fine); *Falkenstein*, 2007 WL 1459302, at *1 (for masturbating in car in front of officer with genitals exposed, defendant was sentenced to two years limited probation, fine and two days in jail).

17

In these cases, the defendants, at most, received two days in jail for conduct much more severe than Lanning's. In contrast, Lanning received not only 15 days' incarceration, but a $1000 fine and was also prohibited from entering the forest for two years. Lanning's criminal history cannot explain this difference because he has none. Thus, Lanning was simply punished much more harshly for much less severe conduct. His sentence was therefore plainly unreasonable.

### C. The Magistrate Judge's Order Concerning Lanning's Presence In Forests And Parks Is Also Unreasonable

The magistrate judge's order prohibiting Lanning from visiting any government forest or park for two years is also unreasonable. That prohibition would be unusual in any disorderly conduct case, but it is particularly unusual in the case of a retiree with no other criminal history. Lanning has not shown himself to be a threat to anyone at a forest or park. Nor is there any evidence that he has previously violated the disorderly conduct statute. Yet the Magistrate Judge barred Lanning from visiting the forests and parks near his home in Western North Carolina. That is a plainly unreasonable curtailment of Lanning's liberty.

## IV. The Magistrate Judge's Order Barring Lanning From Visiting Forests And Parks Exceeded His Statutory Authority

### A. Standard Of Review

Issues of statutory interpretation are reviewed *de novo*. *United States v. Joshua*, 607 F.3d 379, 382 (4th Cir. 2010); Fed. R. Crim. P. 58(g)(2)(D).

### B. The Forests-And-Parks Ban Is Unlawful

In addition to being plainly unreasonable, the order barring Lanning from federal forests and parks is unlawful. Under 16 U.S.C. § 3 and 36 C.F.R. § 1.3, a defendant who violates § 2.34 in a non-military park "shall be punished by a fine as provided by law, or by imprisonment not exceeding 6 months, or both." 36 C.F.R. § 1.3(a). A magistrate judge is not authorized to bar

18

such a defendant from forests and parks for any period of time, much less for two years. Accordingly, the order barring Lanning from forests and parks should be vacated.

## CONCLUSION

For the reasons discussed above, the government has not met its burden of proof beyond a reasonable doubt that Joe L. Lanning committed the offense of disorderly conduct. The disorderly conduct regulation is also void for vagueness, and therefore unconstitutional. Finally, the court's sentence is plainly unreasonable. Accordingly, this Court should vacate Lanning's conviction. In the alternative, this Court should vacate Lanning's sentence and impose a sentence of probation.

Respectfully submitted:

Claire J. Rauscher, Executive Director Federal
Defenders of Western North Carolina, Inc.

 s/ Elizabeth A. Blackwood

| | |
|---|---|
| Matthew R. Segal, DC Bar #483486 | Elizabeth A. Blackwood, NC Bar #40664 |
| Assistant Federal Defender | Research and Writing Attorney |
| Federal Defenders of Western | Federal Defenders of Western |
|   North Carolina, Inc. |   North Carolina, Inc. |
| One Page Avenue, Suite 210 | 129 West Trade Street, Suite 300 |
| Asheville, NC 28801 | Charlotte, NC 28202 |
| (828) 232-9992 (phone) | (704) 374-0720 (phone) |
| (828) 232-5575 (fax) | (704) 374-0722 (fax) |
| matthew_segal@fd.org | elizabeth_blackwood@fd.org |

DATE: November 4, 2010

# CERTIFICATE OF SERVICE

I, Elizabeth A. Blackwood, attorney at law, hereby certify that I have served a copy of the attached **Brief for Appellant** on November 4, 2010 upon the following via electronic filing:

Mark Jones
U.S. Attorney's Office
227 W. Trade Street
Suite 1700
Charlotte, NC 28202
704-344-6222
704-227-0254 (fax)
mark.jones2@usdoj.gov

Respectfully submitted:

Claire J. Rauscher, Executive Director Federal Defenders of Western North Carolina, Inc.

 s/ Elizabeth A. Blackwood
Elizabeth A. Blackwood, NC Bar #40664
Research and Writing Attorney
Federal Defenders of Western North Carolina, Inc.
129 West Trade Street, Suite 300
Charlotte, NC 28202
(704) 374-0720 (phone)
(704) 374-0722 (fax)
elizabeth_blackwood@fd.org