UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CVB DOCKET NO. 0903663 |
| | ) | |
| Plaintiff, | ) | **MOTION FOR DISMISSAL** |
| v. | ) | **OF CITATION** |
| | ) | |
| JOE L. LANNING, | ) | |
| | ) | |
| Defendant. | ) | |

Defendant JOE L. LANNING, by and through his attorney of record, Assistant Federal Defender Robert Carlin, hereby moves this Honorable Court for dismissal of the citation.

This motion is made pursuant to the Fifth and Fourteenth Amendments of the United States Constitution, and is based on the attached Memorandum of Points and Authorities, all files and records in this case, and any further evidence and argument as may be presented at or before the hearing on the motion.

Respectfully submitted,
CLAIRE J. RAUSCHER
Executive Director

DATED: July 22, 2010

ROBERT CARLIN
Assistant Federal Defender

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Joe L. Lanning ("Mr. Lanning") is charged with disorderly conduct, an alleged violation of 36 C.F.R. § 2.34 (a)(2). According to section 2.34 (a), a person "commits disorderly conduct when, with intent to cause public alarm, nuisance, jeopardy or violence, or knowingly recklessly creating a risk thereof, such person commits any of the following prohibited acts: . . . (2) Uses language, an utterance, or gesture, or engages in a display or act that is obscene, physically threatening or menacing, or done in a manner that is likely to inflict injury or incite an immediate breach of the peace."

Mr. Lanning was arrested at the Sleepy Gap Overlook on the Blue Ridge Parkway ("BRP") after allegedly grabbing the genitals of an undercover National Park Service ("NPS") Ranger, who was part of a sting operation apparently targeting males seeking same sex sexual encounters, following a conversation during which Mr. Lanning was led to believe that the Ranger was interested in a consensual sexual encounter.

By this motion, Mr. Lanning respectfully requests that the Court order the dismissal of the case because 36 C.F.R. § 2.34 (a)(2) violates his constitutional rights under the Due Process Clause of the Fifth Amendment, and his right to Equal Protection as guaranteed by the Fifth and Fourteenth Amendments.[1]

---

[1] Depending upon the evidence and argument presented at trial, Mr. Lanning may also argue that the application of 36 C.F.R. § 2.34 (a)(2) in his case violates the First Amendment. An "as-applied" challenge consists of a challenge to the statute's application by the party before the court. See City of Lakewood v. Plain Dealer Publ'g Co., 486 U.S. 750, 758-59, 108 S.Ct. 2138 (1988); see also Women's Med. Prof'l Corp. v. Voinovich, 130 F.3d 187, 193 (6th Cir.1997), cert. denied, 523 U.S. 1036, 118 S.Ct. 1347 (1998) (distinguishing between a successful as applied claim, which enjoins enforcement of a statute only against

2

# II.

# ARGUMENT

## A. 36 C.F.R. § 2.34 (a)(2) Is Impermissibly Vague Under The Due Process Clause Of The Fifth Amendment

The Due Process Clause of the Fifth Amendment provides that an accused may not be "deprived without life, liberty, or property, without due process of law . . . " Statutes can be impermissibly vague for "either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." Hill v. Colorado, 530 U.S. 703, 732, 120 S.Ct. 2480 (2000); see also Grayned v. City of Rockford, 408 U.S. 104, 108-109, 92 S.Ct. 2294, 2298-2299 (1972); Glaccio v. Pennsylvania, 382 U.S. 399, 402-403, 86 S.Ct. 519, 520-521 (1966); United States v. Harriss, 347 U.S. 612, 617, 74 S.Ct 808, 812 (1954). If a statute anticipates the prohibition of speech, it is clearly capable of affecting First Amendment issues, the vagueness doctrine requires greater precision. Smith v. Goguen, 415 U.S. 566, 573, 94 S.Ct. 1242, 1247 (1974); Grayned v. City of Rockford, 408 U.S. at 109, 92 S.Ct. at 2299.

Words like "lewd" and "wanton" fail to "imply a definite and specific referent, but apply broadly to conduct which the speaker considers beyond the

---

the challenger in the objectionable manner, and a successful facial attack, which totally voids a statute in all applications).

Having suffered the shame of arrest and being handcuffed and placed in custody for several hours, followed by the anxiety of facing criminal prosecution that could lead to his incarceration, Mr. Lanning has suffered obvious harm as a result of the application of section 2.34 (a)(2). See Foti v. City of Menlo Park, 146 F.3d 629, 635 (9th Cir.1998) (party must identify some personal harm resulting from application of the challenged statute). Assuming for argument's sake that section 2.34 (a)(2) may be applied to others, it may be invalid as applied to Mr. Lanning's expressive conduct. See generally, City of Lakewood v. Plain Dealer Publ'g Co., 486 U.S. at 758-59, 108 S.Ct. 2138.

bounds of propriety." Pryor v. Municipal Court for the Los Angeles Judicial Dist., 25 Cal.3d 238, 246-247 158 Cal.Rptr. 330 (1979) (trying to define "lewd or dissolute conduct"). Indeed, words like "obscene," "lewdness," and "indecent" are essentially meaningless and unacceptable in criminal prosecutions "absent an attendant specific definition thereof . . . " State v. Kueny, 215 N.W.2d 215, 218 (Iowa 1974). Since no definition of "obscene" is provided, section 2.34 (a)(2) is similarly vague and meaningless.

The District of Columbia v. Walters, 319 A2d 332 (1974) involved nine men who were arrested inside a commercial establishment where they were engaged in mutual masturbation, under a statute that prohibited a "lewd, obscene and indecent act . . ." In ruling that the statute was unconstitutionally vague on its face and as applied, the Court stated that the law involved "betrays the classic defects of vagueness in that it fails to give clear notice of what conduct is forbidden and invests police with excessive discretion to decide, after the fact, who has violated the law." 319 A2d at 335, citing Papachristou v. City of Jacksonville, 306 U.S. 451, 453, 59 S.Ct. 618, 31 L.Ed.2d 110 (1972); Lanzetta v. New Jersey, 405 U.S. 156, 162, 168, 92 S.Ct. 839, 83 L.Ed. 888 (1939). The lack of clarity in the statute's language meant that it could mean different things to different people: "An act that is obscene to one person may be quite innocent to another – and by proscribing 'any other lewd, obscene, or indecent act' the statute is so encyclopedic in its reach that the areas of reasonable disagreement are limitless." Id.

Turning to 36 C.F.R. § 2.34 (a)(2), it prohibits "language, an utterance, or gesture, or . . . a display or act that is obscene . . . " This language does not inform people of ordinary intelligence what conduct is prohibited, as there is no commonly accepted understanding of what would constitute "obscene" language

4

Case 1:10-cr-00047-MR   Document 8-2   Filed 11/04/10   Page 4 of 7

or conduct. Furthermore, it authorizes or even encourages arbitrary and discriminatory enforcement, and fails to provide the trier of fact a legally fixed standard with which to determine whether Mr. Lanning's act was or was not prohibited. Given these failings, section 2.34 (a)(2) is impermissibly vague.

**B.    Equal Protection[2]**

Discrimination in the application of a law that appears to be facially neutral constitutes an equal protection violation. Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064 (1886). Yick Wo involved an ordinance that required consent before one could operate a laundry in buildings not made with brick or stone. Permits to operate laundries in wooden buildings were granted to every non-Chinese applicant but one (eighty permits), but none were granted to any of the two-hundred Chinese applicants. 118 U.S. at 359, 6 S.Ct. at 1066. The conviction under the ordinance was reversed because the law, although facially neutral, had been applied to deny Chinese citizens equal protection of the laws. 118 U.S. at 362-63, 6 S.Ct. at 1067-68. Yick Wo makes clear that when a facially neutral statute is administered so as to create classes, those classes must pass constitutional muster.

Mr. Lanning expects that the evidence at trial will show that the sting operation in which he was ensnared targeted an area thought to be frequented by men seeking sex with other men, as opposed to other areas on the BRP, or elsewhere on federal lands, known for heterosexual or lesbian sexual activity, and further that only male officers were used in an undercover capacity, and that those

---

[2] Although it contains no equal protection clause, the Fifth Amendment forbids discrimination that is "so unjustifiable as to be violative of due process." Weinberger v. Wiesenfeld, 420 U.S. 636, 637 n.2, 95 S.Ct. 1225, 1228 n. 2 (1975), quoting Schneider v. Rusk, 377 U.S. 163, 168, 84 S.Ct. 1187, 1190 (1964).

5

officers sought out only men, no women, for potential investigation and eventual arrest. The United States Supreme Court has previously noted with regret that the great majority of arrests for violations of "lewdness" laws involve homosexual men. Osborne v. Ohio, 495 U.S. 103, 137 n. 12, 110 S.Ct. 1691, 1711 n.12 (1990), citing Pryor v. Municipal Court for the Los Angeles Judicial Dist., 25 Cal.3d 238, 252 n. 8, 158 Cal.Rptr. 330, 338 n. 8 (1979).[3] While it may be nondiscriminatory on its face, 36 C.F.R. § 2.34 (a)(2) is discriminatory as applied if only males seeking sexual encounters with other males are arrested for "sexual" disorderly conduct.

### III.
### CONCLUSION

For the foregoing reasons, Mr. Lanning respectfully requests that the Court grant the requested relief.

Respectfully submitted,
CLAIRE J. RAUSCHER
Executive Director

DATED: July 22, 2010

_____
ROBERT CARLIN
Assistant Federal Public Defender
Federal Defenders of WNC
One Page Avenue, Suite 210
Asheville, NC 28801
(828) 232-9992
E-Mail: robert_carlin@fd.org

---

[3] Mr. Lanning has served a subpoena on the NPS requesting production of information regarding the names, ages and genders, citation numbers and dates of arrest and prosecution of all persons arrested between 2000 and 2010 for violations of 36 C.F.R. 2.34 (a)(2), based on their alleged attempts to solicit any sexual contact or interaction with any other person on the Blue Ridge Parkway or any other federal property within the jurisdiction of the National Park Service ("NPS").

## CERTIFICATE OF SERVICE

I, Robert Carlin, an attorney with the Federal Defenders for the Western District of North Carolina, hereby certify that a true and correct copy of the above and foregoing Motion to Continue Jury Trial was duly served upon David Thorneloe and Mark Jones, Assistant United States Attorneys, by mailing a copy by United States Postal Service, postage prepaid, to 227 W. Trade Street, Suite 1700, Charlotte, NC 28202, and also via email at David.Thorneloe@usdoj.gov and Mark.Jones2@usdoj.gov, this 22nd day of July 2010.

_____
ROBERT CARLIN
E-Mail: Robert_Carlin@fd.org